WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Deposit Insurance Corporation,<br><br>Plaintiff,<br><br>v.<br><br>Nova Financial and Investment Corporation,<br><br>Defendant. | No. CV-15-00855-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion to Enforce Settlement of Plaintiff Federal Deposit Insurance Corporation as Receiver for AmTrust Bank ("FDIC-R").  (Doc. 78.) For the following reasons, the Court grants the motion.

**BACKGROUND**

This case arises out of a Loan Purchase Agreement between Defendant Nova Financial and Investment Corporation ("Nova") and AmTrust Bank.  AmTrust Bank was closed by the Office of Thrift Supervision in December 2009, and FDIC-R was appointed as Receiver.  FDIC-R brought suit against Nova in the United States District Court for the Northern District of Ohio for breach of the Loan Purchase Agreement.  The case was transferred to this district.

In February 2016, FDIC-R and Nova agreed to private mediation.  On February 15, FDIC-R provided Nova and the mediator with a copy of their Confidential Mediation Statement.  This document included a provision that "[a]ny settlement at mediation will be subject to the FDIC's customary settlement terms (see Ex. A), and even minor

deviations from that form will need the approval of senior management of the FDIC." (Doc. 78-2 at 3.) Those "customary settlement terms" were attached in the form of a "Settlement and Release Agreement" ("FDIC Form"). The FDIC Form included a release provision, which stated in relevant part that "FDIC-R . . . hereby releases and discharges the Defendant and its respective heirs, executors, administrators, representatives, successors, and assigns, from any and all claims . . . that arise from or relate to the transactions contained within the cause of action alleged in the Action." (*Id.* at 7.) The mediator emphasized to FDIC-R, in an e-mail confirming that the FDIC Form had been shared with Nova, the importance of sharing the FDIC Form in advance so that "the language of that document should not become a sticking point if the economics are resolved." (Doc. 80-2 at 3.)

Settlement negotiations took place on February 23. After failing to come to an agreement in person, the parties reached an oral settlement in a teleconference with the mediator that same evening. The mediator sent an e-mail to the parties to confirm the settlement. The e-mail summarized the agreement as follows:

> 1. NOVA will pay FDIC-R as receiver for AmTrust a total of $400,000.00.
>
> 2. NOVA will pay all costs of today's mediation, both its share and FDIC's, and FDIC will have no responsibility for any of the mediation costs.
>
> 3. The parties will enter into a settlement agreement for them to put in final form consistent with the form of stipulation FDIC presented with its mediation statement, to include a provision that (a) the two current actions pending against NOVA will be dismissed with prejudice and (b) FDIC-R will file no further claims or actions against NOVA based on any loans NOVA made to any person or entity and underwrote for or sold to AmTrust at any time.

(Doc. 78-3 at 2.) Neither party objected at that time to the mediator's description of the settlement. Neither party now argues that the parties had not reached an agreement, or that the mediator incorrectly summarized the agreement in the e-mail. (Doc. 79 at 2.) But within two days, a number of disagreements arose as the parties sought to reduce the agreement to writing. The parties have resolved all disagreements except one. That disagreement pertains to the scope of the release provision. FDIC-R maintains that the

1   only parties released from liability were those listed in the FDIC Form, which
2   encompassed "Defendant and its respective heirs, executors, administrators,
3   representatives, successors, and assigns." (Doc. 78-8 at 5.)  Nova, on the other hand,
4   argues that the release as agreed to includes not just those people but also Nova's
5   "employees, officers, directors, shareholders, subsidiaries, affiliates, [and] agents." (Doc.
6   78-10 at 5).

7   FDIC-R filed the pending Motion to Enforce, asking the Court to enforce the
8   settlement agreement in accordance with FDIC-R's interpretation.

## DISCUSSION

Courts have the power to enforce valid settlement agreements. *See In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 2014).  A court "may enforce only *complete* settlement agreements." *Callie v. Near*, 829 F.2d 888, 890 (9th Cir. 1987). "Where material facts concerning the *existence* or *terms* of an agreement to settle are in dispute, the parties must be allowed an evidentiary hearing." *Id.*  Here, while a material term of the settlement agreement is disputed, it appears that there is no dispute about the facts relevant to that term, and hence there is no need for an evidentiary hearing.

Whether an enforceable settlement agreement has been entered into is a question of state law. *Wilcox v. Arpaio*, 753 F.3d 872, 876 (9th Cir. 2014).  In Arizona, the construction and enforcement of settlement agreements are governed by general contract principles.  *Emmons v. Superior Court*, 192 Ariz. 509, 512, 968 P.2d 582, 585 (Ct. App. 1998).  A valid contract in Arizona consists of "an offer, acceptance, consideration, and sufficient specification of terms so that obligations can be ascertained." *K-Line Builders v. First Fed. Sav. & Loan Ass'n*, 139 Ariz. 209, 212, 677 P.2d 1317, 1320 (Ct. App. 1983).  "It is well-established that before a binding contract is formed, the parties must mutually consent to all material terms." *Hill-Shafer P'ship v. Chilson Family Tr.*, 165 Ariz. 469, 473, 799 P.2d 810, 814 (1990).  Mutual assent is determined based on objective evidence, not the hidden intent of the parties.  *Id.* at 474.

At issue are the specific terms—if any—the parties agreed to as to the scope of the release.  The mediator's e-mail "confirm[ed] that the FDIC/NOVA matter [had] been settled" and summarized the agreement the parties had reached.  (Doc. 78-3 at 2.)  The e-mail summary specifies or incorporates by reference all the material terms of the agreement.  It lists the monetary settlement, allocates costs, and provides that the rest of the agreement is covered by the FDIC Form, with the addition of two specific provisions.  Both the FDIC Form and the second additional provision from the e-mail address the parties covered by the release.  The FDIC Form delineates the scope of release FDIC-R asserts the parties agreed to.  The second additional provision simply provides that "FDIC-R will file no further claims or actions against NOVA . . . ."  (Doc. 78-3 at 2.)  This provision, on its face, is consistent with the limited release to which FDIC-R asserts the parties agreed.  Nova argues that the mediator believed the release to be broad, and in writing "NOVA" meant "Nova and its related parties."  In support of this, Nova presents a declaration from the mediator testifying that this was, indeed, his interpretation of the scope of the release.  (Doc. 79-1 at 2–3.)  The Court has great respect for the mediator, his legal acumen and his integrity.  However, it appears that the mediator came to his interpretation not from any explicit discussion during the settlement negotiations but from his understanding of what is "typical in commercial disputes" and the parties' "intent . . . to achieve finality."  (*Id.* at 2.)  The mediator's own interpretation, however commercially reasonable, does not factor in to an objective assessment of the parties agreement.[1]

Nova argues that they were not aware of FDIC-R's interpretation of the scope of release and never would have agreed to it.  (Doc. 79 at 5–6.)  But the "hidden intent of the parties" is irrelevant in determining what actually was agreed to.  *Hill-Shafer P'ship*,

---

[1] If the mediator's assessment of what is typical in commercial disputes did not arise "during a mediation," he is not barred from sharing it. A.R.S. § 12-2238. *See Donahoe v. Arpaio*, 872 F. Supp. 2d 900, 910 (2012).  But, his personal views on such matters are not relevant to the substance of the parties' agreement.  To the extent the mediator's views are affected by his assessment of what occurred at the mediation, they are barred by statute.

- 4 -

1  165 Ariz. at 473. The Restatement (Second) of Contracts ("Restatement") "describes the circumstances under which a bargain may be enforceable in accordance with the meaning that one party has attached." *Hill-Shafer P'ship*, 165 Ariz. at 474. "The manifestations of the parties are operative in accordance with the meaning attached to them by one of the parties if . . . that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party." *Id.* (quoting Restatement § 20 (1979)). FDIC-R had provided Nova with its interpretation in the FDIC Form, and had stated that "even minor deviations" from that form would require express approval. Nova thus had reason to know of FDIC-R's interpretation, even if Nova was actually unaware of it. There is no evidence indicating that FDIC-R had reason to know of Nova's interpretation. Thus, any mistake was unilateral, and the agreement remains in force.

Nova also argues that FDIC-R could not have believed that the FDIC Form would control, since in the intervening months FDIC-R has agreed to a number of modifications to the FDIC Form. Most relevantly, FDIC-R agreed to modify the scope of actions to which the release applied. The FDIC Form only provided for a release of claims "aris[ing] from or relat[ing] to the transactions contained within the cause of action alleged in the Action," (Doc. 78-2 at 7), and defined the "Action" as the case before this Court. (Doc. 78-2 at 5.) While these provisions have remained unchanged, the parties agreed to add a provision stating that "FDIC-R will file no further claims or actions against Defendant based on any loans Defendant underwrote for or sold to the Bank pursuant to the Master Correspondent Loan Purchase Agreements."[2] (Doc. 78-8 at 7–8.) Nova argues that this shows that FDIC-R did not believe that the FDIC Form "predetermined what was released" and that FDIC-R could therefore not believe that the FDIC Form "predetermined who was released." (Doc. 79 at 8.) But this does not follow,

---

[2] FDIC-R has agreed to modify this language so as to quote the mediator's e-mail language "verbatim." (Doc. 78 at 4 n.3.) Nova has proposed its own modification consistent with its position that the release should extend to related parties. (*See* Doc. 78-10 at 6–7.)

- 5 -

since it is evident from the mediator's e-mail that the parties agreed to this modification as part of the settlement agreement itself. Simply because FDIC-R agreed to a modification during the settlement process does not mean that they agreed to further modifications after a settlement had been reached. It appears that the only post-agreement changes the parties have made to the FDIC Form are two paragraphs describing the history of the dispute along with minor formatting and grammar changes. None of the modifications indicate either that the parties agreed to leave open the possibility of changes to the scope of release, or that FDIC-R had reason to know Nova believed this to be the case.

## CONCLUSION

The settlement agreement the parties reached is clear as to the scope of the release. The agreement is to be enforced in accordance with the written agreement listed as Exhibit 6a to Plaintiff's motion. (Doc. 78-8.)

**IT IS THEREFORE ORDERED** that the Motion to Enforce Settlement of Plaintiff FDIC-R (Doc. 78) is **GRANTED**.

Dated this 10th day of January, 2017.

*G. Murray Snow*
Honorable G. Murray Snow
United States District Judge